[50 NYS3d 569]

In the Matter of PAUL ARTHUR JOHNSON, an Attorney.

Second Department, April 19, 2017

## APPEARANCES OF COUNSEL

*Mitchell T. Borkowsky*, Hauppauge (*Leslie B. Anderson* of counsel), for Grievance Committee for the Tenth Judicial District.

## OPINION OF THE COURT

Per Curiam.

By order of the Supreme Court of California filed December 7, 2015, the respondent was disbarred from the practice of law in that state for violating California Rules of Professional Conduct rule 4-100 (A) (which provides, in part, that all funds received or held for the benefit of clients must be deposited in a client trust account and no funds belonging to the attorney or law firm shall be deposited therein), and California Business and Professions Code § 6106 (which provides, in part, that the commission of any act involving dishonesty, moral turpitude, or corruption constitutes cause for suspension or disbarment).

As revealed in the State Bar Court decision and order of involuntary inactive enrollment (hereinafter SBC order), the State Bar of California (hereinafter State Bar) initiated the charges against the respondent by filing a notice of disciplinary charges on December 5, 2014. The respondent filed a response on February 2, 2015. The trial was conducted over three dates: March 24, March 25, and April 7, 2015.

The underlying misconduct, as set forth in the SBC order, involved the following two matters:

The DeCuir Matter

> "Peter DeCuir (DeCuir) is the CEO of PlayersRoad, Inc., a company seeking to build an internet website. In 2013, DeCuir was seeking $3.5 million in capital to finance his company. Through a friend who brought businesses seeking capital together, DeCuir was introduced to Arthur Tucker (Tucker), CEO of MSW Industries LLC. Tucker promised DeCuir a $5 million return on an $110,000 investment or at the very least, double his investment within 20 days. To this end, on November 15, 2013, DeCuir and Tucker entered into a Financial Cooperation Agreement (Agreement) involving a 'Private

Bank Monetization Transaction,' specifically the funding, delivery and joint use of a $10 million bank guarantee/standby line of credit.

"On November 15, 2013, pursuant to the Agreement, DeCuir delivered $110,000 to respondent's client trust account . . . , in order to accomplish the funding for the transaction. The Agreement specifically stated that DeCuir's $110,000 was never at risk because it was accomplished by bank to bank delivery with the $110,000 held in an escrow account of an attorney. Pursuant to the Agreement and to respondent's stipulation of facts, respondent was named as an escrow agent with respect to the $110,000. Respondent stipulated that in his capacity as an escrow agent, he was to transfer DeCuir's funds to the funding bank in order to fund the transaction only upon confirmation from DeCuir and Tucker. In short, the Agreement specified that respondent was to act as an unbiased fiduciary for the completion of the Agreement."

The State Bar Court found that, despite the respondent's knowledge of the terms of the agreement, "between November 18 and December 3, 2013, [he] disbursed all of DeCuir's $110,000 without DeCuir's authorization or consent." In fact, he disbursed the funds to Tucker directly and/or to third parties. Further, although the respondent argued that he had no fiduciary duty to DeCuir, the State Bar Court found that he was an escrow agent, and that he owed a duty to protect the funds in his trust account on behalf of DeCuir. The State Bar Court concluded that there was clear and convincing evidence that the respondent willfully misappropriated DeCuir's $110,000 when the respondent's trust account balance fell to $250 on December 30, 2013, and later dropped to $.50 on March 12, 2014. In April 2014, the respondent returned $20,000 to DeCuir.

The Chen Matter

"In August 2013, Lili Chen (Chen) sold her home in Australia for approximately $130,900. The proceeds of the home represented all of her savings. Her fiancé, Tim Overton (Overton), convinced her to use the proceeds to help him build a church near the airport in Sydney, Australia. To this end, Chen was introduced to Arthur Tucker.

"On November 25, 2013, Chen and Tucker entered into a Non-Recourse Loan Agreement (Loan Agreement) involving a 'Private Bank Monetization Transaction,' specifically the funding, delivery and joint use of a $10 million bank guarantee/standby line of credit. Chen had never engaged in such a transaction before.

"Chen and Tucker signed the Loan Agreement; respondent did not.

"Tucker promised Chen a $5 million return on Chen's $130,900 investment. Under the Loan Agreement, some of the conditions were: (1) the bank guarantee would be funded in approximately 20 days; (2) Chen was to deliver $130,900 to respondent's [trust account] in order to accomplish the funding for the transaction; (3) respondent was to act as an escrow with respect to the $130,900; (4) respondent, in his capacity as an escrow, upon confirmation from Chen and Tucker, was to deliver the $130,900 to a funding bank in order to fund the financial instrument; and (5) respondent was to act as 'an unbiased fiduciary for the completion' of the transaction.

"On November 19, 2013, Chen gave birth to her daughter in China. On November 25, 2013, Chen wired $130,900 into respondent's [trust account]."

The State Bar Court found that "[b]etween November 25 and December 3, 2013, respondent disbursed all of Chen's $130,900 without her authorization or consent." In fact, he "directly disbursed the funds to Tucker and/or third parties," and by December 30, 2013, his trust account balance fell to $250. As in the DeCuir matter, the respondent argued that he owed no fiduciary duty to Chen, which argument was rejected by the State Bar Court, as he was "clearly Chen's escrow agent." The State Bar Court concluded as follows:

"As discussed in the DeCuir matter, the mere fact that respondent's [trust account] balance has fallen below the total of amounts deposited in and purportedly held in trust supports a conclusion of misappropriation. Here, there is clear and convincing evidence that respondent willfully misappropriated Chen's $130,900 when his [trust account] balance

fell to $250 on December 30, 2013, and when the balance further dropped to $.50 on March 12, 2014. Respondent was responsible for the funds in the [trust account] and had disbursed them without Chen's authorization or consent. Despite his numerous misrepresentations that there was an accounting error which he was going to rectify, respondent failed to reimburse any portion of the $130,900 to Chen. Respondent had clearly misappropriated the funds, and thereby committed acts of moral turpitude, dishonesty, or corruption in violation of section 6106."

In view of the foregoing, all counts were sustained. In determining an appropriate sanction, the State Bar Court noted certain factors in aggravation, including that the respondent (1) engaged in multiple acts of misconduct; (2) refused to account for $240,900 of entrusted funds in his trust account; (3) significantly harmed DeCuir and Chen by failing to return their funds (DeCuir reports difficulty attracting funding for his Internet start-up business, and Chen states that the loss of her life savings nearly destroyed her relationship with the father of her newborn child); (4) "demonstrated indifference toward rectification of or atonement for the consequences of his misconduct"; (5) lacked candor with DeCuir and Chen; and (6) failed to make complete restitution. Further, the respondent did not establish any mitigating circumstances.

The State Bar Court recommended that the respondent be disbarred and ordered to make restitution to DeCuir and Chen.

By order of the Supreme Court of California filed December 7, 2015, the respondent was disbarred from the practice of law in the State of California and ordered to make restitution to (1) Peter DeCuir in the amount of $90,000 plus 10% interest per year from November 15, 2013, and (2) Lili Chen in the amount of $130,900 plus 10% interest per year from November 25, 2013.

Although the respondent was duly served with this Court's order to show cause dated November 2, 2016, he has neither interposed any response thereto, nor requested additional time to respond. Accordingly, there is no impediment to the imposition of reciprocal discipline.

Based on the misconduct underlying the respondent's disbarment by order of the Supreme Court of California filed December 7, 2015, we conclude that reciprocal discipline is

warranted, and, effective immediately, the respondent is disbarred from the practice of law.

ENG, P.J., MASTRO, RIVERA, DILLON and ROMAN, JJ., concur.

Ordered that pursuant to 22 NYCRR 1240.13 (c), effective immediately, the respondent, Paul Arthur Johnson, is disbarred from the practice of law, and his name is stricken from the roll of attorneys and counselors-at-law; and it is further,

Ordered that the respondent, Paul Arthur Johnson, shall promptly comply with the written rules governing the conduct of disbarred or suspended attorneys (*see* 22 NYCRR 1240.15); and it is further,

Ordered that pursuant to Judiciary Law § 90, effective immediately, the respondent, Paul Arthur Johnson, shall desist and refrain from (1) practicing law in any form, either as principal or as agent, clerk, or employee of another, (2) appearing as an attorney or counselor-at-law before any court, judge, justice, board, commission, or other public authority, (3) giving to another an opinion as to the law or its application or any advice in relation thereto, and (4) holding himself out in any way as an attorney and counselor-at-law; and it is further,

Ordered that if the respondent, Paul Arthur Johnson, has been issued a secure pass by the Office of Court Administration, it shall be returned forthwith to the issuing agency, and the respondent shall certify to the same in his affidavit of compliance pursuant to 22 NYCRR 1240.15 (f).